# EXHIBIT 1

Civil Investigative Demand – Documentary Material and Oral Testimony

# United States Department of Justice
## Washington, D.C. 20530

To:   George Picetti, III, M.D.                 Civil Investigative
      445 Sierra Lane                            Demand No. 18-464
      Sacramento, CA  95864

**Serve on:  Any person authorized to accept service of process for George Picetti, III, M.D.**

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729.  The False Claims Act investigation concerns allegations that you, Christina Holland, and others submitted, or caused the submission of, false claims to federal healthcare programs by (1) seeking reimbursement for unnecessary medical procedures; (2) offering or accepting improper remuneration in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b; and (3) and paying or receiving improper compensation in violation of the Stark Law, 42 U.S.C. § 1395nn.

This Demand requires you to provide documents and oral testimony to the Federal Government.  This is the original of the Demand; no copies have been served on other parties.  The information provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

### Documentary Material

In accordance with the Instructions and Definitions set forth in <u>Attachment A</u>, you are required by this Demand to produce any and all of the documents set forth in <u>Attachment B</u> that are in your possession, custody or control.  You must make this material available to Trial Attorney Christopher Terranova, who has been designated as a False Claims Act custodian in this case.  Mr. Terranova may be contacted at (202) 616-4203, if you have any questions.

These documents shall be produced no later than twenty (20) days from the service of this Demand, and shall be sent to Mr. Terranova's attention at the U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Fraud Section, 175 N Street, NE, Washington, DC  20002, or at another location to be mutually agreed upon by yourself and Mr. Terranova.  The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

### Oral Testimony

You are required by this Demand to give oral testimony under oath, commencing on October 30, 2018 at 9:00 a.m. local time, at the Office of the United States Attorney for the

Eastern District of California, 501 I Street, Suite 10-100, Sacramento, CA 95814, or at such time and in such other place as may be agreed on by you and Assistant United States Attorney Catherine Swann and Trial Attorney Christopher Terranova. The testimony will be taken stenographically and may be recorded audio-visually. Ms. Swann and/or Mr. Terranova is the False Claims Act investigator who will conduct the examination and to whom the transcript of the deposition will be delivered. Mr. Terranova may be contacted at (202) 616-4203, if you have any questions.

Your attendance and testimony at the oral examination are necessary to the conduct of the False Claims Act investigation described above. You have the right to be accompanied by an attorney and any other personal representative at the oral examination.

The general purpose for which this Civil Investigative Demand is issued is to discover the reasons for your use, ordering, and/or change in use and/or ordering of products from K2M Inc., Nexxt Spine LLC, Orthofix Inc., RG Spine LLC, Source Surgical Inc., SpineVision Inc., Stryker Corporation, and T3 Medical LLC (collectively, Device Companies), the nature of and the billing practices for your spinal procedures, and anything of value offered and/or paid to, or solicited and/or received by, you, Christina Holland, T3 and/or RG Spine.

The primary areas of inquiry are: (1) your use, ordering, and/or change in use and/or ordering, of Device Companies' products and the reasons therefor; (2) arrangements, agreements, communications, and transactions involving you and/or your agents and Device Companies and/or their agents, including Holland; (3) anything of value offered and/or paid to, or solicited and/or received by, you, Holland, T3 and/or RG Spine; (4) the marketing, offering, promotion, and sale of Device Companies' products; (5) claims you submitted or caused to be submitted to federal health care programs; (6) complaints, objections, inquiries, or concerns raised about you, Device Companies, or Holland; (7) complaints, objections, inquiries, or concerns that you and/or your agents raised about others at Sutter Medical Center; (8) compensation you received and/or requested from Sutter Medical Center and/or Sutter Medical Group; (9) medical treatment associated with your spinal surgeries; and (10) your response to Civil Investigative Demand No. 17-100.

Issued at Washington, D.C., this _10th_ day of _October_, 2018.

Michael D. Granston
Director
Commercial Litigation Branch

## FORM OF CERTIFICATE OF COMPLIANCE[1]

I have responsibility for producing the documents requested in Civil Investigative Demand No. 18-464.  I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature ——————————————

Title        ——————————————

**SWORN TO** before me this ————— day of

——————————, 2018

—————————————————
NOTARY PUBLIC

—————————————————

[1]     In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

## ATTACHMENT A

## DEFINITIONS & INSTRUCTIONS

### Definitions

1. **"And," "or,"** and **"and/or"** shall be construed either disjunctively or conjunctively so as to bring within the scope of these requests any Document or information which might otherwise be construed as outside their scope.

2. **"Communication"** means any transmission or exchange of information between two or more persons, orally or in writing, by chance or design, including any conversation or discussion, whether face-to-face or by means of telephone, telegraph, telex, electronic (including email, SMS text, instant messaging, file sharing applications, and social media) or other media, and any written documents memorializing the communication.

3. **"Document(s)"** means all printed and electronically stored information as defined and interpreted under the Federal Rules of Civil Procedure, including minutes of meetings, instructions, directives, reports, drafts, notes, memoranda, correspondence, agreements, charts, graphs, manuals, calendars, journals, videotapes, audiotapes, data compilations, marketing materials, training materials, and material stored in any data storage systems, including email, electronic calendars, and electronic formats.  This definition includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any document responsive to this Civil Investigative Demand.

4. **"Including"** means "including but not limited to."

5. **"K2M"** means K2M, Inc., as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

6. **"Nexxt"** means Nexxt Spine, LLC, as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

7. **"Relating to"** or **"relate"** means consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

8. **"Relevant Time Period"** means January 1, 2011 through the present.

9. **"RG"** means RG Spine LLC, as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

10. **"Source Surgical"** means Source Surgical Inc., as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

11. **"SpineVision"** means SpineVision Inc., as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

12. **"Stryker"** means Stryker Corporation, as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

13. **"T3"** means T3 Medical LLC, as well as its parent companies, subsidiaries, affiliated companies, predecessors, divisions, officers, directors, employees, consultants, agents and representatives.

14. **"You" and "Your"** mean George Picetti, III, M.D.

15. The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of these requests any Document which might otherwise be construed as outside its scope.

16. All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses so used, and vice versa.

## Instructions

1. Except as otherwise provided in these instructions, this Demand requires production of all Documents in Your possession, custody, or control that are responsive to one or more of the requests set forth below. All responsive Documents shall be produced to the maximum extent practicable in electronic format in accordance with the Specifications for Production of Electronically Stored Information and Digitized (Scanned) Images set forth in Attachment C. Moreover, regardless of the format of production, all original Documents must be made available to employees of this office or federal law enforcement agencies for inspection, upon request, during normal business hours, and the original Documents must be produced if requested by this office.

2. Unless otherwise stated in any request, this Demand refers to the Relevant Time Period and calls for the production of all requested Documents dated, created, revised, or referred to at any time during such period, and shall include Documents that relate to or affect such period, even though prepared or published before that period.

3. This Demand is continuing in nature. If You become aware of or acquire possession, custody, or control of additional Documents responsive to this Demand, You shall promptly produce such additional Documents.

4. To the extent this Demand seeks protected health information, this Demand is made by the Department of Justice (DOJ) in its capacity as a health oversight agency, and this

2

information is necessary to further health oversight activities. *See* 45 C.F.R. §§ 164.512(d) and 164.501. Further, DOJ will take appropriate measures to ensure that all information provided will be maintained and used in compliance with the Health Insurance Portability and Accountability Act and its implementing regulations.

5.     Productions that include claims of privilege or confidentiality (resulting in Documents, or portions of Documents, being withheld) shall be accompanied by a privilege log that identifies the Document(s) by Bates range and the basis for each claim of privilege. The privilege log shall be electronically produced in Excel or Word format, and for any Document withheld on the ground of any claimed privilege shall include:

   a.   The name and title of the author (and if different, the preparer and signatory);

   b.   The name(s) and title(s) of the individual(s) to whom the Document was addressed;

   c.   The name(s) and title(s) of the individual(s) to whom the Document or a copy of the Document was sent or to whom the Document or a copy, or any part thereof, was shown;

   d.   The date of the Document;

   e.   The number of pages;

   f.   A description of the type of Document and the subject matter of the Document;

   g.   A statement of the specific basis on which the privilege is claimed; and

   h.   The Request(s) to which it is responsive.

6.     When a requested Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document is redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

7.     To the extent that Documents responsive to this Demand once were, but no longer are, in Your possession, custody, or control, this Demand requires production of all Documents (including indices and lists) in Your possession, custody, or control that reflect any transfer or destruction of, or reference to, such Documents.

8.     Identify all responsive Documents that have been lost, discarded, destroyed, altered, or spoiled. In so doing, state: (a) the type of Document; (b) the date of its creation; (c) the approximate date it was lost, discarded, destroyed, altered, or spoiled; (d) the nature of the spoliation; (e) the cause of the spoliation; (f) whether the spoliation was purposeful, inadvertent, or accidental; and (g) the identity of each person having knowledge about the Document and about its spoliation.

9.     If no Documents exist that are responsive to a given request, a statement to that effect shall be provided at the time of production.

10.     All Documents provided in response to the Demand shall include all marginalia and post-its, as well as any attachments referred to or incorporated by the Document.  To the extent that Documents are found attached to other Documents, by means of paper clips, staples or other means of attachment, such Documents shall be produced together in the condition in which they are found.  All Documents shall be produced in the manner and format in which they are kept in the usual course of business.  If Documents are stored by You electronically, they should be produced in electronic format.  If Documents are stored in multiple formats, they should be produced in each format in which they are stored by You.

**ATTACHMENT B**

**<u>DOCUMENTARY MATERIAL REQUEST</u>**

1. All Documents and Communications relating to K2M, Nexxt, RG, Source Surgical, SpineVision, Stryker, and/or T3.

**ATTACHMENT C**

*September 2017*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

1. **Specification Modifications**

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

2. **Production Format of ESI and Imaged Hard Copy**

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, <u>except</u> for spreadsheets and presentation files (e.g. Excel, PowerPoint) <u>and</u> those forms listed below in section 5, shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

    **a.**    **Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

        (i) All TIFF file names shall include the unique Bates number burned into the image. (See paragraph 8, below, regarding Bates number instructions.)
        (ii) All TIFF image files shall be stored with the ".tif" extension.
        (iii) Images shall be OCR'd using standard COTS products.
            1. An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.
               a. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
               b. No image folder shall contain more than 2000 images.

    **b.**    **Concordance® Image Cross Reference File:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

        (i) Image Cross Reference Sample Format:

            ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
            ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
            ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
            ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

**ATTACHMENT C**

*September 2017*

### Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

    **c.**    **Concordance® Load File:** Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

    (i)  Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | ¶ *or Code 020* |
| *Text Qualifier* | þ *or Code 254* |

    (ii)  This load file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
    (iii)  There should be one line for every record in a collection.
    (iv)  The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

    **d.**    **The extracted/OCR text** should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

    **e.**    **Directory and folder structure:** The directory structure for productions should be:

\*CaseName*\LoadFiles
\*CaseName*\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
\*CaseName*\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
\*CaseName*\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

**3.**    **Required Metadata/Database Fields**

A "√" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data types other than imaged hard copy materials (which should follow "Hard Copy" column) and email and email repositories (both of which should follow "Email" column). For example, "Other ESI" includes MS Office files (e.g. Excel, PowerPoint), WordPerfect files, and any files identified in section 5 below.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | √ | √ | √ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | √ | √ | √ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | √ | √ | √ |

2

**ATTACHMENT C**

*September 2017*

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |

3

**ATTACHMENT C**

*September 2017*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |

4

**ATTACHMENT C**

*September 2017*

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

**ATTACHMENT C**

*September 2017*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

**4.      Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies <u>within</u> a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format.  The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government.  All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields.  The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5.      The following data must be discussed with the government in advance of producing:**

    **a.**   Hidden Text (e.g. track changes, hidden columns, mark-ups, notes)
    **b.**   Embedded Files (e.g. Word documents, Excel spreadsheets, .wav files, etc.)
    **c.**   Image-Only Files (e.g. image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text)
    **d.**   Encrypted Files (e.g. protected by password or encryption key)
    **e.**   Email Repositories (e.g. email databases, such as Outlook .PST, Lotus .NSF, etc.)
    **f.**   Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.
    **g.**   Social Media
    **h.**   Structured Data (e.g., Oracle, SQL, MySQL, QuickBooks, etc.)
    **i.**   Structured Data from Proprietary Applications (e.g., proprietary timekeeping, accounting, etc.)
    **j.**   Photographs
    **k.**   Images from which Text Cannot be OCR Converted
    **l.**   Format of ESI from Non-PC or Non- Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.)
    **m.**   Native files

**6.      Production of Imaged Hard Copy Records**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

    **a.**    Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
    **b.**    The first document in the collection represents the parent document and all other documents will represent the children.
    **c.**    All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression).  All documents shall be produced in black and white TIFF format unless the image requires color.  An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.  Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
    **d.**    All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

6

ATTACHMENT C

September 2017

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

7.    **Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

8.    **Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

         PREFIX0000001          PREFIX0000003
         PREFIX0000001.001          PREFIX0000003.001
         PREFIX0000001.002          PREFIX0000003.002

9.    **Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

         **a.**    CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
         **b.**    External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
         **c.**    Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
         **d.**    Media should be labeled with the case name, production date, Bates range, and producing party.

10.    **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

11.    **Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

-XXX-

# EXHIBIT 2

| | |
|---|---|
| **From:** | Donald H.Heller <dheller@donaldhellerlaw.com> |
| **Sent:** | Tuesday, October 16, 2018 1:50 PM |
| **To:** | Terranova, Christopher (CIV) |
| **Subject:** | RE: Picetti/CID |

Chris, I acknowledge receipt of CID No.18-464 regarding the deposition of Dr. George Picetti.  October 30, 2018, is a date in which I am unavailable. Regards, Don

Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

*American Board of Trial Advocates (ABOTA), Sacramento Valley Chapter – 2017 Trial Lawyer of the Year.*

*"Always remember Goliath was a 40 point favorite over David."  - Ralph "Shug" Jordan / Auburn*

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication

**From:** Terranova, Christopher (CIV) <Christopher.Terranova@usdoj.gov>
**Sent:** Tuesday, October 16, 2018 10:42 AM
**To:** Donald H.Heller <dheller@donaldhellerlaw.com>
**Subject:** RE: Picetti/CID

Don:

Please see attached CID No. 18-464 to George Picetti, M.D.  Please confirm that you accept service on behalf of Dr. Picetti.

Best,
Chris

**Christopher Terranova**
**Trial Attorney, U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
(202) 616-4203 (Phone) | (202) 514-0280 (Fax)
Christopher.Terranova@usdoj.gov

---

**From:** Donald H.Heller [mailto:dheller@donaldhellerlaw.com]
**Sent:** Tuesday, October 16, 2018 9:46 AM
**To:** Terranova, Christopher (CIV) <cterrano@CIV.USDOJ.GOV>
**Subject:** Picetti/CID

https://www.nwcryobank.com/sperm-donation/  Up to $1000 a month for sperm Donations. I'll be in my office after 9:45 this morning. Call me and will finish our conversation from Friday

Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT 3

LAW OFFICES OF
## DONALD H. HELLER
A LAW CORPORATION
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864
TELEPHONE: (916) 974-3500
FACSIMILE: (916) 520-3497

DONALD H. HELLER
MEMBER NEW YORK
AND CALIFORNIA BARS

DIRECT DIAL
(916) 974-2077

October 18, 2018

**VIA E-MAIL Catherine Swann, Esq. catherine.swann@usdoj.gov**
**Christopher Terranova, Esq.Christopher.Terranova@usdoj.gov**

Catherine Swann, Esq. catherine.swann@usdoj.gov
Christopher Terranova, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
Washington, DC 20530

Re:   **CID 18-464 George D. Picetti, M.D. Served by Email on Tuesday,**
      **October 16, 2018**

Dear: Ms. Swann and Mr. Terranova[1]:

This letter will briefly summarize my client's position in respect to the CID served on the undersigned on October 16, 2018. We will provide a more detailed objections with citation to authority to the CID in the near future, in respect to the abuse of 31 U.S.C.§ 3733 – Civil Investigative demands, to wit, §3733(a)(1) which addresses the use CIDs for the department documentary material or information relevant to a false claims law violation before commencing a civil proceeding or the election to intervene under 3730(b). You have thousands of pages of documents to date from multiple parties. You have deposed unilaterally, several parties under the authority of a CID.

In respect to taking my client's oral deposition my client will invoke his privilege against self-incrimination under the Fifth Amendment and you may compel his testimony under 18 U.S.C. §§ 6001 et.seq. You advised that you wish to have Dr. Picetti appear and interpose objections as to each question. As expressed I believe this is a waste of time and money, but we will do so.

I mentioned several dates for this deposition and I realized in mentioning those dates that I have not checked with Dr. Picetti as to his availability. He left on a 10-day trip on October 17, 2018, to Montana with his sons on a long-planned hunting adventure. I should also indicate, that Dr. Picetti has a full surgical schedule planned weeks in advance and that for the convenience of Dr. Picetti's patients, I would recommend that the deposition be taken on a Saturday. Rescheduling patients, all of whom have major surgeries contemplated would be a harsh penalty for the patients. I provided potential dates of November 6, 7, 13,

---

[1] I have addressed the letter to both of you but since you did all the talking other than Ms. Swann's initial pleasantries, "you" is directed you.

Christopher Terranova, Esq.
CID 17-100 George D. Picetti, M.D.
October 18, 2018
Page 2

and 14, 2018. In looking at my schedule more carefully, November 14, 2018, I am making a telephone appearance as an expert witness in an arbitration proceeding in Southern California which the last couple of hours. November 15, 2018 is hereby substituted.

I just learned that it was not the construction in the office space on the second floor in my building that knocked out our telephone system, but rather, our office manager advised in an e-mail that: "There was a large warehouse fire in the downtown area. All of the Integra lines (our phone provider) have been affected and our phones are down. They could not give me an estimated time of repair. I will let you know as soon as I know." You have my cell number if you need to reach me this week and hopefully the phones will be back soon. If you get a busy signal you know the phones are out on my office line.

Thank you for your cooperation.

Very truly yours,

DONALD H. HELLER
A Law Corporation

DONALD H. HELLER

DHH/lh

cc.    Madison Simmons, Esquire

# EXHIBIT 4



**U.S. Department of Justice**

Civil Division

Tel. (202) 616-4203

_Washington, DC 20530_

October 19, 2018

By Email
Donald Heller, Esq.
3638 American River Drive
Sacramento, CA 95864

    **Re:**    **Civil Investigative Demand (CID) No. 18-464 to George Picetti, M.D.**

Dear Don:

    Thank you for the call and letter dated yesterday regarding the above-referenced CID, which seeks Dr. Picetti's testimony on October 30, 2018.

    You have advised that Dr. Picetti is considering refusing to answer questions relating to the CID topics by invoking his Fifth Amendment privilege, unless he is granted criminal immunity in accordance with the provisions of part V of title 18. At this time, we do not intend to seek approval from the Attorney General to grant Dr. Picetti such criminal immunity. Thus, we will proceed with Dr. Picetti's testimony pursuant to the CID, recognizing that it is possible that he decides to invoke his Fifth Amendment privilege in response to one or more questions. To avoid any confusion, it is not our "wish" that Dr. Picetti "interpose objections as to each question" (Oct. 18, 2018 Ltr. from D. Heller at 1), but we recognize that an objection may be made during Dr. Picetti's testimony when it is claimed that he is entitled to refuse to answer the question on the grounds of any constitutional or other legal right or privilege, including the Fifth Amendment. *See* 31 U.S.C. § 3733(h)(7)(A).

    We understand that you are not available on October 30, 2018, but we appreciate your proposal of November 7, 2018. We will take Dr. Picetti's testimony on November 7, 2018 beginning at 9:00 a.m. local time at the Office of the United States Attorney for the Eastern District of California, 501 I Street, Suite 10-100, Sacramento, CA 95814. We look forward to seeing you and Dr. Picetti then.

                    Sincerely,

                    Christopher Terranova
                    Trial Attorney
               Commercial Litigation Branch

cc:    AUSA Catherine Swann (By Email)
          Madison Simmons, Esq. (By Email)

# EXHIBIT 5

LAW OFFICES OF

**DONALD H. HELLER**

DONALD H. HELLER
MEMBER NEW YORK
AND CALIFORNIA BARS

A LAW CORPORATION
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864
TELEPHONE: (916) 974-3500
FACSIMILE: (916) 520-3497

DIRECT DIAL
(916) 974-2077

October 22, 2018

**VIA E-MAIL (Christopher.Terranova@usdoj.gov )**

Christopher Terranova, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
Washington, DC 20530

    Re:    *CID 18-464 George D. Picetti, M.D.*

Dear:  Mr. Terranova:

      I am in receipt of your e-mail and letter of October 19, 2018. I think you might have missed reading the following paragraph which I have highlighted on my letter of October 18, 2018 and which was sent to you on October 19, 2018, and which you acknowledged reading.

> **"I mentioned several dates for this deposition and I realized in mentioning those dates that I have not checked with Dr. Picetti as to his availability. He left on a 10-day trip on October 17, 2018, to Montana with his sons on a long-planned hunting adventure. I should also indicate, that Dr. Picetti has a full surgical schedule planned weeks in advance and that for the convenience of Dr. Picetti's patients, I would recommend that the deposition be taken on a Saturday. Rescheduling patients, all of whom have major surgeries contemplated would be a harsh penalty for the patients. I provided potential dates of November 6, 7, 13, and 14, 2018. In looking at my schedule more carefully, November 14, 2018, I am making a telephone appearance as an expert witness in an arbitration proceeding in Southern California which the last couple of hours. November 15, 2018 is hereby substituted."**

      Dr. Picetti is on vacation in Montana, he is unreachable. He has as far as I know surgeries scheduled when he returns. I am not sure how much you know about medicine and in particular, spine surgeries, invariably patients in need of spinal surgery often times are on nonsteroidal anti-inflammatory medication or in some cases narcotics. Patients are advised to discontinue those medications two or three weeks prior to surgery.

Christopher Terranova, Esq.
CID 18-464 George D. Picetti, M.D.
October 22, 2018
Page 2

Rescheduling surgeries for patients, is not only disconcerting, but is both potentially harmful and emotionally challenging for patients.

It is my considered opinion, that you are abusing the CID power the Civil Division of the Department of Justice possesses under § 3733. You have obviously failed to read Berger v. United States, a case that every federal prosecutor civil or criminal should read.

You are endeavoring to rewrite subdivision (a)(1) of § 3733. Either you are by conduct attempting to undermine the Federal Rules of Civil Procedure as to how civil litigation is conducted; or more insidiously, trying to gather evidence for a criminal prosecution. Dr. Picetti is a good and decent man and if you thought that your multiple interviews and comments with other individuals and their lawyers, do not find their way back to counsel, then you thought incorrectly. Fact gathering, during the process of anticipated litigation, is never ethically practiced by lawyers who ask the demeaning questions and make accusations of impropriety, without probable cause based on credible evidence. You cannot play politics with people's lives even in this current era of incivility.

Either way, Dr. Picetti will not sit for a deposition until it is scheduled at on a date, that is convenient to Dr. Picetti and most importantly, and primary, the convenience of his patients. I will not allow you or anyone else possessing a commission from the Attorney General of the United States to abuse the power of your office in respect to any client.

So, I throw the gauntlet down, make a motion to compel if you think you have a basis.

See you in court.

Very truly yours,

DONALD H. HELLER
A Law Corporation

DONALD H. HELLER

DHH/lh

cc.    Madison Simmons, Esquire
       Catherine Swann, Esq. via email -catherine.swann@usdoj.gov

# EXHIBIT 6

**From:**           Donald H.Heller <dheller@donaldhellerlaw.com>
**Sent:**           Sunday, October 28, 2018 6:46 PM
**To:**             Terranova, Christopher (CIV)
**Cc:**             Swann, Catherine (USACAE); Madison M. Simmons
**Subject:**        RE: Picetti CID 18-464

Chris, Dr. Picetti and I spoke yesterday and he returns to Sacramento tonight. Dr. Picetti will seat for a deposition on a mutually agreed date when he can schedule the deposition so as not to interfere with his patient surgeries which are scheduled months in advance and in addition to the medication(s) issues which are significant – Dr. Picetti advised me that patient caregiver/family and airline and other transportation arrangements and personal and business plans for patients are set months in advance. Saturdays may work and Dr. Picetti will make a good faith effort to make a Saturday work.

At a deposition, you can have your questions prepared and we will be compelled to respond with objections based on privilege. 31 USC Sec 3733(h)(7)(b). That ends the inquiry. If that doesn't work for you than we will let a federal judge decide on your motion to compel. Dr. Picetti will not cancel any patient scheduled surgeries. I have my own scheduling issues with trials and scheduled medical procedures (12/3-5) and probably 12/6 for recovery from 12/5, based on my last procedure.

In respect to your disagreement with abusing the CID authority. Look at the enabling statute again for the CID, 31 USC Sec. 3733 (a)(1): " . . . (T)he Attorney General, or a designee, may, <u>before commencing a civil proceeding</u> under section 3730(a) or other false claims law, <u>or making an election under section 3730(b)</u>, issue in writing and cause to be served upon such person, a civil investigative demand. As you know, the CID is to determine whether to initiate a civil action or intervene and accomplish unilateral discovery in disregard of adversary proceeding contemplated by the Civil Rules of Federal Procedure. You checkmating yourself by your own conduct. Here's how and I am sure Ms. Swann had nothing to do with your behavior.

You first attempted to solicit a settlement offer from Nexxt Spine on August 6, 2018, when you met with them in Washington, DC at your office. (At the same meeting you asked Mr. Ellsbury in gist whether he can monetize the sexual relationship between Ms. Holland and Dr. Picetti).[1] At the same meeting you, you mentioned that Dr. Picetti and Ms. Holland own properties together and have several common bank accounts.

On or about October 3, 2018, you telephoned Mr. Sanford Boxerman, Nexxt Spine's counsel in this investigation and related that based on the notice you provided to Mr. Ellsbury at your office on August 6, 2018,  to, wit, that Dr. Picetti and Ms. Holland own properties together and have several common bank accounts and were engaged in a personal relationship, and the failure of Nexxt spine to terminate Ms. Holland as distributor of Nexxt Spine products, Nexxt Spine has civil liability for a false claims Act/Antikickback Statute violations and that Nexxt Spine should make a offer to settle the government's claims. So that's what I mean by checkmating yourself out of any legitimate use of the CID for deposition. A government lawyer or any lawyer, cannot make an ethical demand for a monetary settlement unless the lawyer has probable cause to believe there is a legitimate claim based on liability. So, if there is such basis, then the preliminary function of a CID to file a civil complaint or intervene has been subsumed by the basis for a settlement offer. This moves far beyond abuse of the CID. We will let a judge decide.

I have defended healthcare false claims cases since the early 90's and defense contractor false claims cases in the early 80's – this case is unlike any case I have ever handled before in any district. So, I am ready for any alternative you select. I will be available Monday, 10/29 in my office and will heading to Boston on 10/30 in the morning for meetings at the U.S. Attorney's office for the next three days returning to Sacramento on November 2nd.  Don Heller

[1.] Dr. Picetti was mortified and horrified by your insinuation that Ms. Holland was simply a prostitute, when your comment was relayed to Dr. Picetti, that Ms. Holland was trading spine equipment orders for sex.

Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

*American Board of Trial Advocates (ABOTA), Sacramento Valley Chapter – 2017 Trial Lawyer of the Year.*

*"Always remember Goliath was a 40 point favorite over David."  - Ralph "Shug" Jordan / Auburn*

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication

**From:** Terranova, Christopher (CIV) <Christopher.Terranova@usdoj.gov>
**Sent:** Monday, October 22, 2018 4:47 PM
**To:** Donald H.Heller <dheller@donaldhellerlaw.com>
**Cc:** Swann, Catherine (USACAE) <Catherine.Swann@usdoj.gov>; Madison M. Simmons <msimmons@mathenysears.com>
**Subject:** Re: Picetti CID 18-464

Don:

We disagree with any suggestion that we are acting improperly or abusing the CID process. It appears that our October 19 letter has been misunderstood. We are trying to schedule Dr. Picetti's CID testimony for a date when both you and he are available. That is why we asked about available dates when you said that you were unavailable on the noticed date of October 30, 2018. If November 7, 2018 does not work for Dr. Picetti, let us find a date that does. Please provide us with dates in November that work for you and Dr. Picetti. Feel free, of course, to reach out by phone to discuss these scheduling issues.

Best,
Chris
-------- Original message --------
From: "Donald H.Heller" <dheller@donaldhellerlaw.com>
Date: 10/22/18 2:29 PM (GMT-06:00)
To: "Terranova, Christopher (CIV)" <cterrano@CIV.USDOJ.GOV>
Cc: "Swann, Catherine (USACAE)" <Catherine.Swann@usdoj.gov>, "Madison M. Simmons" <msimmons@mathenysears.com>
Subject: Picetti CID 18-464

See attached letter.

Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

*American Board of Trial Advocates (ABOTA), Sacramento Valley Chapter – 2017 Trial Lawyer of the Year.*

*"Always remember Goliath was a 40 point favorite over David." - Ralph "Shug" Jordan / Auburn*

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication

# EXHIBIT 7

**U.S. Department of Justice**

Civil Division

Tel. (202) 616-4203

_____

*Washington, DC 20530*

November 1, 2018

By Email
Donald Heller, Esq.
3638 American River Drive
Sacramento, CA 95864

     **Re:    Civil Investigative Demand (CID) No. 18-464 to George Picetti, M.D.**

Dear Don:

     We write to respond to your October 28, 2018 email.  Again, you have accused the United States of "abusing the CID authority" by serving Dr. Picetti with a CID for testimony.  Your accusation is meritless, as we previously have explained.

     The United States has reason to believe that Dr. Picetti is in possession of information relevant to its false claims law investigation; CID No. 18-464 is the first CID for testimony that the United States issued to Dr. Picetti in this matter; and the United States has neither "commenc[ed] a civil proceeding under section 3730(a) or other false claims law, [n]or ma[de] an election under section 3730(b)."  31 U.S.C. § 3733(a)(1).  You have not disputed any of these points.  Instead, you appear to believe that the United States already has decided to commence a civil proceeding under the False Claims Act against Dr. Picetti.  That is not true.  The United States is conducting a false claims law investigation involving Dr. Picetti, and no recommendations or decisions have been made with regard to any potential civil action against Dr. Picetti or any other parties in this matter.

     Dr. Picetti's testimony is important to the United States' ongoing investigation.  As you know, both the False Claims Act (FCA) and the Anti-Kickback Statute (AKS) prohibit a person from taking certain actions, while acting with a particular state of mind.  *See, e.g.*, 31 U.S.C. § 3729(a)(1) ("knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . ."); 42 U.S.C. § 1320a-7b(b)(1) ("knowingly and willfully solicits or receives any remuneration . . .").  Taking testimony pursuant to a CID allows the United States to learn of, and inquire about, actions Dr. Picetti took and his state of mind when he took those actions.  This is particularly important in this investigation because Dr. Picetti produced to the United States few contemporaneous communications, such as emails or text messages, apparently due to his deletion of those documents.  Moreover, Dr. Picetti possesses first-hand knowledge of actions taken by other parties whose conduct may be at issue.

Your email also references the United States' investigation of Nexxt Spine LLC, a medical device manufacturer whose products Dr. Picetti has used. In particular, you speculate about purported communications in which you were not involved. Your speculation is off-base. We will not respond point-by-point to such speculation about the United States' investigation of an entity that you do not represent. However, to be clear, the United States has made no "demand [to Nexxt Spine] for a monetary settlement" in this matter. The United States has offered to meet with Nexxt Spine, in a manner protected by Federal Rule of Evidence 408, to discuss potential claims and defenses arising from Nexxt Spine's conduct. Such discussions offer the opportunity for the participants to discuss factual or legal issues implicated by the United States' investigation. Notably, the United States made such an offer to you months ago, which you accepted, and the United States has shared information with you identifying certain of Dr. Picetti's medical procedures, and you have indicated that you intend to share with the United States your client's view of those procedures. Offering to engage in such discussions is a way to learn information that will inform the United States' decision regarding whether to commence a civil proceeding under the FCA; indeed, the United States offered to engage in such discussions precisely because it has not made any such decision.

Separately, we note that you repeatedly have made gratuitous comments of a sexual nature regarding your client and Ms. Holland. (*See, e.g.*, May 4, 2018 and Oct. 16, 2018 Emails from D. Heller.) Whether or not such comments are an attempt at humor or designed to trivialize the United States' investigation, we believe that the comments are inappropriate and we ask that you stop. The United States is not investigating whether your client had a sexual relationship with Ms. Holland, and we are not interested in the information that you have provided on that subject.

Lastly, we seek your cooperation in scheduling Dr. Picetti's CID testimony. We understand that you were not available on October 30th, the date identified in the CID for Dr. Picetti's testimony. On October 18th, you provided alternative dates in November, but the date chosen (November 7th) proved unworkable for Dr. Picetti. We understand that Dr. Picetti has a surgery schedule, and we will be as flexible as possible on any business day when he has no surgery scheduled. We also understand that you are not available December 3rd through 6th. Within these parameters, please provide as many alternative business days as possible during the weeks of November 26th or December 10th or 17th.

Sincerely,

Christopher Terranova
Trial Attorney
Commercial Litigation Branch


cc:     AUSA Catherine Swann (By Email)
        Madison Simmons, Esq. (By Email)

# EXHIBIT 8

LAW OFFICES OF

**DONALD H. HELLER**

DONALD H. HELLER
MEMBER NEW YORK
AND CALIFORNIA BARS

A LAW CORPORATION
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864
TELEPHONE: (916) 974-3500
FACSIMILE: (916) 520-3497

DIRECT DIAL
(916) 974-2077

November 9, 2018

**VIA E-MAIL (_Christopher.Terranova@usdoj.gov_ )**

Christopher Terranova, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
Washington, DC 20530

     Re:   ***CID 18-464 George D. Picetti, M.D.***

Dear: Mr. Terranova:

     This letter responds to your letter of November 1, 2018. It becomes pointless and counter productive to digress into a letter war; rather, I prefer to resolve our legal disputes in front of a federal judge/magistrate judge. After nineteen plus months of traveling a one way street, I am of the considered opinion that you are abusing the CID process provided by statute, and which is intended as previously pointed out, in my prior written communications to be a vehicle for a preliminary investigation as to whether the Department of Justice should file a civil complaint or intervene in a *qui tam* action. I the last analysis, it is up to the judiciary to address and "prevent manifest injustice".

     You conveyed verbally to Mr. Andy Elsberry when you met with him in August 2018, at your office in Washington DC, in the presence of his attorney Sanford Boxerman, Esquire, that Dr. Picetti and Ms. Holland lived together and had their names on some common bank accounts. (You did not mention, that the percentage and total sum of funds into the accounts, came from Dr. Picetti, including a substantial personal injury settlement belonging to Dr. Picetti.)  You then suggested to Mr. Boxerman that Nexxt Spine should consider a civil settlement. I was told the gist of the Mr. Boxerman's response was, "tell me what the basis for liability is?"

     Two months later, on or about October 4, 2018, in a telephone conversation, you conveyed to Mr. Boxerman, that it was time for Nexxt Spine to make a monetary settlement proposal to the government based on the information that you (Christopher Terranova) had conveyed to Mr. Elsberry when you first met him in person in August 2018. The gist of what you stated to Mr. Boxerman, was that by not terminating Ms. Holland as a Nexxt Spine distributor, Nexxt Spine ratified the wrongful behavior of Ms. Holland and Dr. Picetti, so as to provide a basis to hold Nexxt Spine liable for a violation of the False Claims Act. As previously, expressed Dr. Picetti denies he committed any wrongful or illegal act and has not violated the federal false claims act or any other federal or state statute.

DHELLER@DONALDHELLERLAW.COM
WEBSITE: WWW.DONALDHELLERLAW.COM

*AMERICAN BOARD OF TRIAL ADVOCATES (ABOTA), SACRAMENTO VALLEY CHAPTER – 2017 TRIAL LAWYER OF THE YEAR*

Christopher Terranova, Esq.
CID 18-464 George D. Picetti, M.D.
November 9, 2018
Page 2

Implicit in your statements, however, is that you reached a conclusion that there was basis either to intervene or file a civil complaint. How can you settle a civil claim in the name of the United States without a legal basis to do so? Drawing upon the language of the Hobbs Act which criminalizes extortion "under color of official right" by public official, I am of the considered opinion that a court would find Evidence Code Rule 408, not germane, since we are not attempting to prove or disprove liability, but rather, demonstrate abuse and prevent manifest injustice. I am not suggesting you are committing a crime, but rather show abuse and disregard for the civil justice discovery and procedure rules.

Justice Sutherland's opinion in Berger v. United States, 295 U.S. 78, 79 (1935) has application, a Justice Department attorney ". . . is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in an . . . [civil action] . . . is not that it shall win a case, but that justice shall be done."

The purpose of a CID is to make a preliminary determination, and once that determination is made then the decision to intervene or not intervene or pursue a civil complaint or not do can be made. If a decision to litigate is made, the ensuing litigation will be conducted pursuant established rules of civil litigation, to wit, the Federal Rules of Civil Procedure, Federal Rules of Evidence, statutes and case authority. Civil litigation is intended to be adversarial and governed by Title V of the Federal Rules of Civil Procedure, which defines the rules of required Disclosure and Discovery.

At this point, the burden is now on you, make a motion to compel, or file a complaint or intervene and unseal a *qui tam*, if one exists. Dr. Picetti will not sit for deposition under the facade of a CID. I will agree without a judge telling me so, and I am satisfied that I will win this battle. In civil litigation, under Rule 26 you have the responsibility to disclose facts and evidence, and eventually the opportunity of taking Dr. Picetti's deposition in accordance with Rule 30. In this matter, it appears, that an investigative tool has turned into a "star chamber". The playing field needs to be leveled. File your motion to compel and I am ready to litigate this very important and significant legal issue.

I also wish to address the eventual deposition of Dr. Picetti and express the reasons in the interest of Dr. Picetti's patients and their loved ones and caregivers; simply setting deposition doesn't work without advanced scheduling.

1) Dr. Picetti has a complex surgical practice in which he operates on patients with multiple disease processes in addition to a multitude of other illnesses that potentially affect their surgical outcomes. For example, many of his patients need to be taken off of blood thinners and anti-inflammatory medications. In

addition, a majority of these patients need cardiac clearance. This may include turning off pacemakers or defibrillators in preparation for these surgeries.

2) Most all of his patients will need assistance once discharged home. In that regard, patients have family who have scheduled time off to help them. Many of these family members come from out of state. Travel has been planned along with time off from their jobs in order to help their loved one convalesce after surgery.

3) Holidays seasons and summers are when parents schedule their children to have their scoliosis surgeries. In that regard, Thanksgiving and Christmas seasons as well as summers are overbooked with minors who will have surgery while they are out of school.  Anyone with children at home will understand that this is the preferred seasons in which to schedule procedures for their kids.

4) Additionally, end of year deductibles is a major consideration for patients who are looking to meet their maximum out of pocket expenses. For this reason, many of Dr. Picetti's scheduled surgeries include patients who are trying to meet this deadline.

 5) Dr. Picetti, requests, at least a month's notice prior to a deposition so that he may have the opportunity to re-schedule any elective cases move the patient to another date in order to accommodate a deposition.

Finally, I have been involved in complex federal civil and criminal litigation for more than 45 years and have tried and resolved more cases than I can actually remember case names. In my years of litigating cases, I have always enjoyed federal litigation either being pursued or defended by United States attorneys' offices and sometimes, includes Department of Justice attorneys. The reason I have enjoyed those cases, is the fact that in almost every case, with one or two exceptions, I have found government lawyers to be the most cordial, civil and professional in respect to pre-litigation, motion practice, discovery and actual trial. Litigation is not a game to me or my clients, it often times involves professional careers, sometimes liberty and sometimes significant monetary damages. And sometimes, a defendant is innocent of wrongdoing.

The line is now drawn in the sand, I am ready to vigorously represent my client's interests and insist that the law and rules be applied and followed lawfully. In the last analysis, that is how disputes are decided within the civil justice system. This is the first time I have ever written a letter like this in my entire civil federal practice, involving hundreds of cases from coast to coast in multiple districts, as well as a number of cases in the Eastern District of California.

Have a nice weekend.

Christopher Terranova, Esq.
CID 18-464 George D. Picetti, M.D.
November 9, 2018
Page 4

Very truly yours,

DONALD H. HELLER
A Law Corporation

DONALD H. HELLER

DHH/lh

cc.    Madison Simmons, Esquire
       Catherine Swann, Esq. via email (Catherine.swann@usdoj.gov)
       Dr. Picetti

# EXHIBIT 9



**U.S. Department of Justice**

Civil Division

Tel. (202) 616-4203

_____

*Washington, DC 20530*

November 14, 2018

<u>By Email</u>

Donald Heller, Esq.
3638 American River Drive
Sacramento, CA  95864

**Re:**     **Civil Investigative Demand (CID) No. 18-464 to George Picetti, M.D.**

Dear Don:

     We write to respond to your November 9, 2018 letter.  We do not agree with your view that there has been a "letter war."  We are simply trying to schedule Dr. Picetti's testimony pursuant to the above-referenced CID, which was served more than 4 weeks ago.  We believe that Dr. Picetti possesses information relevant to our ongoing False Claims Act investigation, and we reiterate our desire to work with you to schedule his testimony on a mutually-convenient date.  To that end, we request that you provide proposed dates by Friday, November 16.  If Dr. Picetti refuses to testify, please identify by that date all legal authorities that you believe justify such refusal.

     If your client elects to forego cooperation in scheduling a mutually-convenient date for his testimony, we will be left with no choice but to seek to compel his testimony.  We would much prefer to avoid wasting the Court's time and the parties' resources on such an avoidable and unnecessary scheduling dispute.

                 Sincerely,

               Christopher Terranova
                 Trial Attorney
          Commercial Litigation Branch

cc:    AUSA Catherine Swann (By Email)
       Madison Simmons, Esq. (By Email)

# EXHIBIT 10

LAW OFFICES OF

**DONALD H. HELLER**

DONALD H. HELLER
MEMBER NEW YORK
AND CALIFORNIA BARS

A LAW CORPORATION
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864
TELEPHONE: (916) 974-3500
FACSIMILE: (916) 520-3497

DIRECT DIAL
(916) 974-2077

November 16, 2018

***VIA E-MAIL (Christopher.Terranova@usdoj.gov )***

Christopher Terranova, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
Washington, DC 20530

Re:   ***CID 18-464 George D. Picetti, M.D.***

Dear: Mr. Terranova:

I am in receipt of your letter of your letter of November 14, 2018. I incorporate by reference my letters to you of November 9, 2018 and October 22, 2018; in respect to our anticipated opposition to your motion to compel, I will defer to reading your motion before selecting other exhibits since I anticipate that other correspondence, exhibits,  and declarations will be part of an opposition to your threatened motion to compel.

31 U.S.C. § 3733(a)(1) is the operative authority for the issuance of a Civil Investigative Demand (CID). As you know, the authority is self-limiting:

> Whenever the Attorney General, or a designee (for purposes of this section), has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation, **the Attorney General, or a designee, may, before commencing a civil proceeding under section 3730(a) [31 USCS § 3730(a)] or other false claims law, or making an election under section 3730(b) [31 USCS § 3730(b)], issue . . . a civil investigative demand** requiring such person . . .. [Emphasis added].

As previously, explained to you on the telephone and in writing, you have exceeded the intent, authority and purpose of the CID statute, by using a CID after you had concluded that there was a basis to make and cause to be a monetary demand on Nexxt Spine, to settle the government's civil claim against said company. Once you so, the investigation moved well past the purpose authorized by 31 U.S.C. § 3733(a)(1), to wit, a determination whether to file a civil proceeding, [§3730(a)] or intervene in a *qui tam*. [§ 3730(b)].

The Government has moved well beyond the stage of a preliminary fact finding so as to make a determination of probable cause to file a civil complaint or intervene.  Rather we

Christopher Terranova, Esq.
CID 18-464 George D. Picetti, M.D.
November 16, 2018
Page 2

are satisfied that you are using the CID improperly to gather information that should be obtained in a civil adversary proceeding, commenced or pursued under the Federal Rules of Civil Procedure and the Federal Rules of Evidence with all parties who the government wishes to litigate against present through counsel, for the purpose of representing their respective clients/defendants. The government's conduct is abusive of the process. We are not moving to dismiss, rather we demand the recognition of fundamental due process of law by the court assigned.

Since Dr. Picetti was first served with the CID issued on February 10, 2017, he has produced thousands of documents, including, six years of Dr. Picetti's personal banking records, as well as real property records including deeds and purchase and closing documents and other financial records. You have obtained from Sutter Health hundreds of thousands of documents, including but not limited to medical records and all of Dr. Picetti's e-mails within the Sutter System that Dr. Picetti is required to use in respect to his medical and surgical practice. (HIPAA required).

CIDs have been served on multiple named entities in the Dr. Picetti CID and subsequent CIDs, all of said companies have produced hundreds of thousands of documents; including all of the companies that are related to and in which Ms. Christina Holland is a principal. As you have stated, Ms. Holland is one of the targets of the government's investigation.

### FACTUAL AND LEGAL BASIS FOR OUR BELIEF THAT THE GOVERNMENT THROUGH YOU AND OTHERS HAVE ABUSED THE CID PROCESS

Well after the initial investigation commenced in 2017, you personally met with multiple potential witnesses using the CID process. On August 6, 2018, you met with Mr. Andy Ellsbury of Nexxt Spine in Washington D.C. At that time, you advised Nexxt Spine through Mr. Ellsbury and Nexxt Spine's counsel, Sandford Boxerman, that Nexxt Spine should provide you with a settlement offer in connection to Nexxt Spine's potential liability for its actions based on the conduct of Dr. Picetti and Ms. Holland. Such conduct consisted of the fact that Ms. Holland and Dr. Picetti live together, share some bank accounts and own real property together. Dr. Picetti and Ms. Holland are not married; albeit, despite you original misunderstanding.

On or around October 3, 2018, you contacted Nexxt Spine's counsel, Mr. Boxerman by telephone and you informed Mr. Boxerman that Nexxt Spine has civil liability under the false claims act and anti-kickback statute for its failure to terminate Ms. Holland as a distributor after your meeting and interview of Mr. Ellsbury and information you related to Mr. Ellsbury on August 6, 2018 and mentioned above. You informed Mr. Boxerman that Nexxt Spine should make an offer to settle the Government's claims relating to its involvement in Ms. Holland and Dr. Picetti's actions on a theory of agency.

I suggest that you examine the Justice Manual promulgated by the United States Department of Justice intended to provide guidance to DOJ lawyers, [www.justice.gov], and the Mission Statement in the "Our Mission Statement":

> To enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans. [Emphasis added].

If you examine Title 4 of the Justice Manual, the sections therein, clearly, assumes and presupposes a factual basis exists against corporations and individuals before a demand liability before demand. See, 4-3.200 - Bases for The Compromising or Closing of Claims Involving the United States.

I have to assume that you were acting ethically in inviting Nexxt Spine opportunity to settle with the Government before filing a civil claim or intervening. Since predicating Nexxt Spine's liability your determination that Dr. Picetti and Ms. Holland violated the law and accordingly, Nexxt Spine has liability on one or more agency law theories, you determined that the Government has a viable claim against my client. In so doing, you moved beyond the stage of initial fact finder and entered the stage of an adversary and are attempting to deny access to our civil justice system. A well plead complaint, discovery, abeyance of the rules of evidence and compliance with the rules of civil procedure. The predicate for the CID process is for the DOJ to determine whether there is a basis (probable cause) to pursue a claim for liability and move forward against the parties. I assume you have evidence to justify demanding a settlement offer from Mr. Ellsbury relating to the Nexxt Spine's position as Ms. Holland's employment as a distribution and a theory based on evidence of unlawful behavior on the part Dr. Picetti.

Courts have previously condemned such attempts by the Government to broaden the narrow power authorized by § 3733(a)(1) . See, United States v. Kernan Hosp., Civil Action No. RDB-11-2961, 2012 U.S. Dist. LEXIS 165688, at *1 (D. Md. Nov. 20, 2012). In Kernan, a Government's false claims act case was dismissed for failure to plead fraud with particularity. The Government then moved to conduct a further CID investigation. The Government argued the CID was permissible since there was no civil proceeding currently commenced before the court. The court denied this pretextual argument proffered by the Government as a vehicle to conduct further one-sided discovery since the Government had already determined it would file suit. Kernan noted the CID process was instituted to merely "remedy the Government's inadequate investigative tools" to allow it to determine if there was any basis for filing a suit. Id. at 16, citing to S. Rep. No. 99-345, at 4.

Kernan expressly denied the argument the Government could issue a CID anytime a suit was not pending:

This legislative history suggests that when Congress circumscribed the period during which the Government could issue a civil investigative demand to the prefiling stage, it did not mean to provide the Government with that power at any time a suit was not pending. Id. at 17.

The court also noted that "[b]oth the civil investigative demand provision and Rule9(b) of the Federal Rules are intended to encourage careful behavior." Furthermore, "[t]he Senate Report regarding CIDs emphasized that the civil investigative demand is a tool to be used by 'the responsible Assistant Attorney General.'" Id. at 22.

United States v. Markwood, 48 F.3d 969 (6th Cir. 1995), is an important case which other circuits and states have followed in respect to enforcement of a CID for an abuse of process. Markwood refused to show up for a CID oral examination asserting a Fifth Amendment privilege. Id. p. 974. As you know, you refused to confirm or deny the existence of a criminal investigation in this case and I advised that Dr. Picetti will demand immunity pursuant to 31 U.S.C. § 3733(h)(7)(B). The purpose of our objection to the CID is require yo to make the motion to compel Dr. Picetti to appear and provide Dr. Picetti the opportunity to challenge what we believe is an abuse of the CID process and accordingly, allow Dr. Picetti his day in Court before a magistrate judge or district judge to vindicate Dr. Picetti's due process rights in protecting against the abuse of process that we have documented above.

Indeed, Markwood, supra, at pp. 978-979 addresses due process in the context of administrative subpoenas. The fundamental point as stated in Markwood, supra, is whether the district court process in enforcement being abused by the government. "A district court's task is limited, however, to making decisions concerning whether the subpoena, and the enforcement process, are authorized by Congress, whether the information sought is relevant to the agency's investigation, and whether or not the investigation and enforcement of the subpoena is an abuse of the court's process." Id. p.979.

The evidence shows that 31 U.S.C. § 3733(a)(1) a narrowly crafted vehicle for the discovery of a basis to file a civil action or intervene by the DOJ, and not a broad administrative subpoena. You as a representative of the government has gone past the purpose of the statute.

In response to my letters challenging the abusive conduct of misusing the CID process, you merely responded that the government has not yet made a determination. However, your actions evidence the opposite. The government's conduct has violated Dr. Picetti's due process rights. We look to a district court to vindicate Dr. Picetti's rights and disapprove the aforementioned abuse of process.

//

//

Christopher Terranova, Esq.
CID 18-464 George D. Picetti, M.D.
November 16, 2018
Page 5

Very truly yours,

DONALD H. HELLER
A Law Corporation

DONALD H. HELLER

DHH/lh

cc.    Madison Simmons, Esquire
       Catherine Swann, Esq. via email (Catherine.swann@usdoj.gov)
       Dr. Picetti

# EXHIBIT 11



**U.S. Department of Justice**

Civil Division

Tel. (202) 616-4203

_____

*Washington, DC 20530*

November 23, 2018

By Email

Donald Heller, Esq.
3638 American River Drive
Sacramento, CA 95864

    **Re:   Civil Investigative Demand (CID) No. 18-464 to George Picetti, M.D.**

Dear Don:

    We write to respond to your letter dated November 16, 2018, which was sent on November 17, 2018. As previously noted, we disagree with your view of the United States' investigation of Nexxt Spine LLC.

    Your letter cites two cases in support of Dr. Picetti's refusal to comply with the CID. Neither supports his refusal to testify. First, *United States v. Kernan Hospital* concerned a CID served <u>after</u> the United States had filed a False Claims Act (FCA) complaint. Civ. A. No. RDB-11-2961, 2012 WL 5879133, at *1–2 (D. Md. Nov. 20, 2012). In contrast, the United States has neither filed an FCA complaint against Dr. Picetti, nor made any decision or recommendation regarding any potential civil action against him. Second, rather than supporting Dr. Picetti's position, *United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995), rejects many of the arguments you have raised. For example, the court rejected the CID recipient's due process argument as "meritless" and held that the recipient "incorrectly asserts that a CID is not an administrative subpoena and not subject to the case law governing the enforcement of administrative subpoenas." *Id.* at 982–93. The court affirmed the ruling that required the CID recipient to testify. *Id.* at 987.

    Please respond by November 26, 2018 with available times to meet and confer by phone, and we will be as flexible as possible to schedule the call.

                  Sincerely,

                  Christopher Terranova
                  Trial Attorney
              Commercial Litigation Branch

cc:      AUSA Catherine Swann (By Email)
           Madison Simmons, Esq. (By Email)

# EXHIBIT 12

**From:**          Donald H.Heller <dheller@donaldhellerlaw.com>
**Sent:**          Friday, May 04, 2018 5:32 PM
**To:**            Terranova, Christopher (CIV)
**Cc:**            Swann, Catherine (USACAE)
**Subject:**       RE: Picetti CID 17-100

Chris, I will provide a letter to you next week addressing this subject. I just verified my memory of my original note. Dr. Picetti's cell phone is a Sutter cell phone. The rapidity of deletions is due in part to ridding his phone of unnecessary communications and the reason he doesn't discuss patients is HIPPAA.

Switching gears, since you are still focused on wedding and marriage, I looked again at 42 CFR 411.351 the definitions in Subpart J, to see if it had been amended recent, it had not. The section provides that: "Immediate family member or member of a physician's immediate family means husband or wife; birth or adoptive parent, child, or sibling; stepparent, stepchild, stepbrother, or stepsister; father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law; grandparent or grandchild; and spouse of a grandparent or grandchild." There has been no addition of semen donor or donee as included in immediate family member. Have a nice weekend. Regards, Don

Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

*American Board of Trial Advocates (ABOTA), Sacramento Valley Chapter – 2017 Trial Lawyer of the Year.*

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication

**From:** Terranova, Christopher (CIV)
**Sent:** Friday, May 04, 2018 1:05 PM
**To:** Donald H.Heller
**Cc:** Swann, Catherine (USACAE)
**Subject:** RE: Picetti CID 17-100

Don,

Thank you for the email. I would appreciate learning more about the emails and text and instant messages. From our conversation today, it sounded like you met with Dr. Picetti soon after he received the CID, and he told you that he did not have any emails or text or instant messages responsive to the CID. It sounded like he also may have shown you his phone, but that no one besides himself ever searched his phone, other devices, email accounts, or cloud storage for emails or text or instant messages responsive to the CID. It sounded like he may have possessed emails and text or instant messages that would have been responsive to the CID but were deleted at some point in time. It was unclear to me based on our conversation when the data were deleted and whether they would be recoverable. I look forward to learning more from you and your client.

Have a nice weekend and trip with your wife.

Best,
Chris

**Christopher Terranova**
**Trial Attorney, U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
(202) 616-4203 (Phone) | (202) 514-0280 (Fax)
Christopher.Terranova@usdoj.gov

---

**From:** Donald H.Heller [mailto:dheller@donaldhellerlaw.com]
**Sent:** Friday, May 04, 2018 2:55 PM
**To:** Terranova, Christopher (CIV) <cterrano@CIV.USDOJ.GOV>
**Subject:** Picetti CID 17-100

Chris, attached is the civil malpractice action filed against Dr. Fox in Sacramento County. I am going to send you a letter regarding text messages and emails. Have a nice weekend. Regards, Don


Donald H. Heller

Donald H. Heller, A Law Corporation

3638 American River Drive

Sacramento, CA 95864

(916) 974-3500

(916) 974-2077 (Direct)

(916) 520-3497 (Fax)

*American Board of Trial Advocates (ABOTA), Sacramento Valley Chapter – 2017 Trial Lawyer of the Year.*

Website: www.donaldhellerlaw.com

Attorney/Client Privileged Communication

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication